CARLTON, J.,
 

 for the Court:
 

 ¶ 1. Linda Curry appeals the judgment of the Pontotoc County Chancery Court, which granted her a divorce from her husband, Charles Curry, on the ground of irreconcilable differences. Aggrieved with the equitable distribution of the marital assets, Linda perfected the present appeal.
 

 FACTS
 

 ¶ 2. Linda and Charles married in October 1990. The marriage produced no children together, although they both have adult children from previous marriages. Charles filed for divorce on September 5, 2006, alleging the grounds of habitual drunkenness and habitual cruel and inhuman treatment. Charles also alleged the alternative ground of irreconcilable differences. Linda answered and counterclaimed for divorce, alleging habitual cruel and inhuman treatment or, alternatively, irreconcilable differences. Charles later amended his complaint to include the ground of desertion.
 

 ¶ 3. After conducting discovery, including taking depositions, Charles and Linda agreed to withdraw their fault-based grounds for divorce and consented to a divorce on the ground of irreconcilable differences. Charles and Linda agreed that certain articles of property constituted separate, non-marital property not subject to an equitable division. However, they failed to reach an agreement on the division of certain real and personal property,
 
 *726
 
 which they submitted to the chancellor for equitable division.
 

 ¶ 4. After a three-day trial, the chancery court entered a final decree of divorce on January 14, 2009, nunc pro tunc to the final date of trial, December 12, 2008. In that order, the chancellor divided the parties’ personal property, the marital home, and two parcels of land. In all, Charles received approximately $189,200 in personal and real property attributable to the marriage, and Linda received approximately $183,950 in personal and real property from the marriage. Both Linda and Charles also received their own separate, non-marital property, which when added to the property received in the chancellor’s distribution amounted to approximately $577,950 for Linda and $207,700 for Charles.
 

 ¶ 5. On appeal, Linda alleges two errors in the chancellor’s division of property. First, she argues that the chancellor erred in his calculation of the amount of money Charles should receive from the equity in the marital home. Second, Linda argues that the chancellor erred in granting Charles ownership of rental property the couple owned in Pontotoc, Mississippi, valued at $75,000.
 

 STANDARD OF REVIEW
 

 ¶ 6. “This Court’s standard of review regarding domestic relations matters is a limited one. We will not disturb the findings of a chancellor unless manifestly wrong, clearly erroneous, or if the chancellor applied the wrong legal standard.”
 
 McKnight v. McKnight,
 
 951 So.2d 594, 595-96 (¶ 5) (Miss.Ct.App.2007). However, we review questions of law de novo.
 
 Oswalt v. Oswalt,
 
 981 So.2d 993, 995 (¶ 5) (Miss.Ct.App.2007).
 

 DISCUSSION
 

 ¶ 7. Linda’s assignments of error center on the chancellor’s division of the parties’ marital assets. Specifically, Linda argues that the chancellor miscalculated the portion of the equity in the marital home which Charles should receive, and second, she argues that the chancellor’s decision to award Charles the real property the couple owned in Pontotoc, valued at approximately $75,000, constituted an arbitrary decision.
 

 ¶ 8. Case law governs how chancellors approach property division in divorce cases. Before dividing the couple’s assets, the chancellor should first classify the couple’s assets as either marital or non-marital.
 
 Boutwell v. Boutwell,
 
 829 So.2d 1216, 1221 (¶ 19) (Miss.2002). The supreme court held in
 
 Hemsley v. Hemsley,
 
 639 So.2d 909, 914 (Miss.1994), that “[ajssets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties’ separate estates prior to the marriage or outside the marriage.” Thus, the chancellor may equitably divide only the marital property.
 
 Messer v. Messer,
 
 850 So.2d 161, 167 (¶ 24) (Miss.Ct.App.2003) (citing
 
 Hemsley,
 
 639 So.2d at 914). Case law also explains that while a spouse’s separate property retains its separate identity during the marriage, “[pjroperty brought into the marriage by one partner and used by the family becomes a marital asset.”
 
 Boutwell,
 
 829 So.2d at 1221 (¶ 19).
 

 ¶ 9. After classifying the parties’ assets as either marital or non-marital, the chancellor should then proceed to equitably divide the property using the factors set forth by the supreme court in
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928 (Miss.1994).
 
 Messer,
 
 850 So.2d at 167 ¶ 25).
 
 [1]
 
 
 *727
 
 Finally, the chancellor should examine whether the equitable division of the marital property, considered in light of the non-marital assets, adequately provides for both parties.
 
 Id.
 
 If the distribution of the parties’ assets, including any separate property, fails to adequately provide for the parties, the chancellor then considers whether to award alimony to one of the parties.
 
 Id.
 
 With the above guidelines in mind, we turn to a review of the property division in the present case.
 

 (1) The Equity in the Marital Home
 

 ¶ 10. Linda’s first argument involves the chancellor’s division of the equity in the marital home. Linda held the title to the property and owned it prior to the marriage. However, the parties stipulated that the property was subject to equitable division because the couple had lived in the home throughout the marriage. According to testimony presented at trial, the home’s value was $250,000. At some point in the marriage, Linda mortgaged the home for $100,000 in order to pay personal tax debts, leaving $150,000 in equity in the home.
 

 ¶ 11. Linda contends that the chancellor’s judgment is clearly erroneous, as she asserts that a calculation of twenty percent of the
 
 equity
 
 in the marital home would be $30,000, and not $50,000, as the chancellor stated in his opinion. Linda is correct in that $50,000 is twenty percent of $250,000, or the
 
 value
 
 of the home, albeit before she encumbered the house with an additional $100,000 debt. According to Linda, the chancellor intended for Charles to receive twenty percent of the equity in the home, or $30,000, and this Court should reverse the chancellor’s judgment and reduce the amount of the award to $30,000, which she claims the chancellor clearly intended to do.
 

 ¶ 12. Despite Linda’s assertions that the chancellor intended to award Charles twenty percent of the equity, and not $50,000, we find the chancellor’s bench opinion and judgment clear on this point when read in context. Examining the chancellor’s statements in his opinion regarding the division of the marital home in context, we find the chancellor intended for Charles to receive $50,000. In reviewing the chancellor’s opinion, we find the chancellor’s references to the “equity” in the marital home refer to the equity in the home prior to Linda’s encumbering the home with a $100,000 mortgage in order to settle her personal tax debts. Considering the chancellor’s opinion in the proper context, we quote the following from his bench opinion:
 

 I want to first of all note this as to the property, and this is basically a summation of it, the marital residence, the marital residence and the property on which it was located was purchased by Linda prior to the marriage. There is now dispute between the parties as to whether this is marital or separate party [sic]. According to the case of
 
 Heigle v. Heigle,
 
 654 So.2d 895, and
 
 Johnson v. Johnson,
 
 I just quoted the cite, non-marital assets may be converted to marital assets if they are commingled or marital assets are used for familial purposes.
 
 *728
 
 Therefore, the marital residence and the property on which it is located is a marital asset. It will be divided as follows; according to both parties, the property is worth $250,000. The property was paid for at the time of the marriage. However, Linda has used the property to obtain a $100,000 loan in order to satisfy tax liens of hers. Because this loan was used for her benefit only, Linda will be responsible for the repayment of that loan. Charles Curry is entitled to 20 percent of the equity in the house. This is $50,000. Linda Curry will receive 80 percent of the equity in the house, $200,000, minus the debt owed of $100,000, for a total of $100,000.
 

 ¶ 13. Later in the bench opinion, the chancellor reiterated the division set forth above, stating the following:
 

 As to the real property, the marital residence, as the Court has already noted, Charles gets $50,000 of that, or 20 percent. Linda gets a net of $100,000. Really it was $200,000 but she owed $100,000 of her own debt on it so she gets the equivalent of $200,000 on that, it being valued at $250,000.
 

 ¶ 14. Furthermore, in his written final judgment, the chancellor again addressed the division of the marital home, simply stating: “The Court does hereby order, adjudicate and decree that the Plaintiff, Charles Curry, is entitled to $50,000.00 equity out of the marital residenee[.]” The bench opinion, as quoted above, reflects that the chancellor was referencing the property’s equity prior to Linda’s additional encumbrance. Clearly, the chancellor intended for the mortgage on the property to affect only the portion of the property awarded to Linda, because Linda alone encumbered the property.
 

 ¶ 15. While we find that the chancellor clearly articulated his intent in his opinion and judgment, we note that a judgment only needs to be reasonably clear to be enforceable.
 
 See Westerburg v. Westerburg,
 
 853 So.2d 826, 827-29 (¶¶ 8-11) (Miss.Ct.App.2003) (holding that an inart-fully drawn judgment sufficiently informed the parties of their obligations under the divorce judgment). The chancellor’s final order in this case is more than reasonably clear. The chancellor simply stated that Charles should receive $50,000 from the equity in the marital home. Therefore, we find this assignment of error lacks merit.
 

 (2) The Rental Property in Pontotoc
 

 ¶ 16. In her second assignment of error, Linda argues that the chancellor erred in granting Charles ownership of rental property the couple owned on Highway 9 in Pontotoc, Mississippi. The property, valued at $75,000, generates approximately $550 per month in rental income. According to Linda, the chancellor awarded the property to Charles for the sole purpose of offsetting a reduction in retirement payments Charles took in order to list Linda as a beneficiary should he predecease her. Linda claims that Charles offered no proof of the actual loss in retirement income. During his testimony, Charles estimated that the reduction in his retirement payments amounted to approximately $700 per month.
 

 ¶ 17. Charles retired in 2001. Prior to his retirement, Charles received information from the National Automatic Sprinkler Industry Welfare Fund explaining Charles’s options for his pension payments. Charles elected the “Early Retirement with 66 2/3% Joint Option with Pop-Up” option. Under that option, Charles elected to receive a smaller sum each month, with the trade-off that Linda would continue to receive 66 2/3% of Charles’s pension in the event Charles predeceased Linda. In the event Linda predeceased Charles, Charles’s pension payments
 
 *729
 
 would “pop-up” to his unreduced pension amount for the remainder of his life.
 

 ¶ 18. Despite Linda’s assertion that Charles presented no proof of the actual reduction he took in his retirement benefit as a result of electing the joint-pension option, Charles presented the calculation woi'ksheets he received from the pension fund as an exhibit at trial. According to the calculation worksheets, Charles’s pension amount was $2,562.82 per month. Under the “Early Retirement with 66 2/3% Joint Option with Pop-Up” option, which Charles elected, he receives $2,314.23 per month. If Charles predeceases Linda, she will receive 66 2/3% of Charles’s monthly pension payment, or $1,542.80. If Linda predeceases Charles, Charles’s pension payments “pop-up” to his original pension amount of $2,562.82. Therefore, under the retirement option Charles elected, he took a reduction of $248.59 per month.
 

 ¶ 19. When addressing the distribution of the rental property, the chancellor stated the following:
 

 As to the Highway 9 property with rentals, the Highway 9 property was purchased after the marriage and placed in both parties’ names. Therefore, the parties agree that this is a marital asset. The parties would also agree that the property is worth $75,000. According to the parties’ testimony[ies], there are two buildings available for rent on this property. Charles testified that these buildings generate approximately $550 a month in rental income, $350 on the front building and $200 on the back building. This property will be awarded to Charles Curry. The rental property should compensate for the reduction in retirement benefits received by Mr. Curry and based on the irrevocable payment option selected during the marriage. There was no evidence presented to this Court as to what the actual difference in amounts is between the two options. However, Mr. Curry estimates it to be around $700 a month.
 

 ¶ 20. Although the chancellor incorrectly stated that Charles presented no evidence showing the differences in the various payment options available to Charles upon retirement, we find substantial evidence in the record to support the chancellor’s judgment. The chancellor noted in his opinion that the value of the Highway 9 property, including rental income from the property, should compensate Charles for the reduction in his retirement payments. The chancellor does not indicate in his opinion that offsetting the reduction in retirement payments provided the sole basis for his decision to divide the property in that manner.
 

 ¶ 21. We note that because Mississippi is not a community property state, the chancellor bears no obligation to divide the marital property equally.
 
 Parker v. Parker,
 
 641 So.2d 1133, 1137 (Miss.1994). Rather, the chancellor possesses the authority to divide marital property equitably, and appellate courts lack authority to overrule a chancellor’s property division absent manifest error.
 
 Id.
 
 Examining the property division in the present case as a whole, we find that the chancellor achieved an equitable division of the marital property. The final division of property yielded a total of $189,200 in assets to Charles and a total of $183,950 to Linda. The difference in the value of the assets awarded to Charles and Linda amounts to only $5,250, approximately one-percent greater share of the marital assets.
 
 See Redd v. Redd,
 
 774 So.2d 492, 496 (¶15) (Miss.Ct.App.2000) (affirming a chancellor’s division of property which resulted in the wife receiving only twenty-three percent of the entire marital estate).
 

 ¶ 22. We find this issue without merit.
 

 
 *730
 
 CONCLUSION
 

 ¶ 23. Because Linda fails to prove that the chancellor’s judgment was manifestly wrong, clearly erroneous, or applied the improper legal standard, we affirm the judgment of the chancery court.
 

 ¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF PONTOTOC COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . The
 
 Ferguson
 
 factors include the following:
 

 "(1) substantial contributions to the accumu
 
 *727
 
 lation of the property, including economic and domestic contributions by each party to the marriage, (2) expenditures and disposal of the marital assets by each party, (3) the market value and emotional value of the marital assets, (4) the value of the nonmarital property, (5) tax, economic, contractual, and legal consequences of the distribution, (6) elimination of alimony and other future frictional contact between the parties, (7) the income and earning capacity of each party, and (8) any other relevant factor that should be considered in making an equitable distribution."
 
 Selman v. Selman,
 
 722 So.2d 547, 552 (¶ 16) (Miss.1998) (citing
 
 Ferguson,
 
 639 So.2d at 928).