CARLTON, J.,
for the Court:
¶ 1. Susan Kristine Gregory Jenkins (Kris) appeals the judgment of the Jones County Chancery Court, which granted her an irreconcilable-differences divorce from her husband, Robert Wayne Jenkins Jr. (Bobby). Aggrieved with the chancellor’s property division, Kris appeals. Finding no abuse of discretion by the chancellor, we affirm.
FACTS
¶2. Bobby and Kris were married on *7 November 18, 1999,[1] and separated on April 5, 2007. On April 11, 2007, Bobby filed for divorce in the Jones County Chancery Court alleging irreconcilable differences. Shortly thereafter, Bobby filed an amended complaint wherein he sought a divorce on the ground of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. On June 11, 2007, Bobby and Kris entered into an agreed temporary order.[2] Then, on January 7, 2008, Kris filed an answer to Bobby’s amended complaint for divorce denying: that she exhibited cruel and inhuman treatment toward Bobby and that irreconcilable differences existed between the parties. Thereafter, Kris propounded discovery upon Bobby. Bobby then moved to quash Kris’s discovery and requested that the court enter a protective order finding that Kris’s discovery was propounded in a delinquent manner and outside the time period specified by the Uniform Chancery Court Rules. The Jones County Chancery Court entered a judgment granting Bobby’s motion to quash Kris’s propounded discovery and allowing Bobby’s motion for a protective order. Kris then filed a motion in limine on June 11, 2009, requesting that the court hold any and all distribution of marital assets until it had sufficient information and documentation to aid the court in determining what were the marital assets, what the basis was for each asset, and the fair market value of any asset or debt.[3] On that same day, Bobby and Kris filed a joint motion requesting that the court grant a divorce on the ground of irreconcilable differences, leaving the contested issues of identifying and dividing the couple’s marital assets and debts for the court to resolve. The chancellor then conducted a trial on these contested matters.
¶ 3. At trial, Bobby testified that he was self-employed, prior to and at the time of his marriage to Kris. Bobby testified that in 1986, he founded and was the sole-owner of Mid-Mississippi Sales and Service, Inc. Bobby also testified that in 1993, he founded Industrial Steel Corporation with one partner and obtained a forty-nine percent ownership interest in the company.
¶ 4. Kris testified that she worked as a nurse at Laurel Bone & Joint Clinic from the time of the marriage until August 2006. Kris testified that, in addition to her nursing career, she took care of Bobby’s daughter, Michelle, who lived with them for two or three years; and she maintained the couple’s home, tending to the cleaning, laundry, and grocery shopping. Kris further testified that she left Laurel Bone & Joint Clinic due to a cervical disc rupture, and after she took a period of time off to rehabilitate her cervical disc, she worked at Wesley Medical Center.[4] Kris testified that after she began work at Wesley Medical Center, she temporarily left to seek treatment for severe depression. Kris testified that her employers at Wesley Medical Center told her that she would be eligible for rehire after she re *8 ceived treatment for her depression and completed an intensive out-patient program for substance abuse. Kris testified that during the time that she was attending the out-patient program, she sustained a fall while visiting a friend in Jackson and had to undergo surgery on her shoulder and rotator cuffs, which ultimately prevented her from being able to perform her nursing duties. Kris testified that she filed an application for social security disability benefits in November 2008, but it was still pending at the time of trial.
¶ 5. Bobby and Kris testified that until their separation in 2007, they lived in a home on 175 acres that Bobby paid for and owned prior to the marriage.[5] Bobby testified that improvements toward the property were made during the marriage, including fencing and the construction of a barn, and that he purchased farm equipment for the property. Bobby also testified that he purchased cattle and horses during the marriage. Bobby testified that he also owned 3.8 acres of real property in Forest, Mississippi, at the time of marriage.[6] Bobby also testified that he purchased 240 acres of real property in Jones County on or about April 18, 2007, using funds from the couple’s joint checking account to make a partial payment toward the purchase price, and financed the balance.
¶ 6. The record reflects that Bobby and Kris shared the responsibility of managing the couple’s finances during the marriage. Bobby testified that he possessed his own separate checking account, which he used to pay the couple’s taxes and insurance, the home’s maintenance and improvements, and vacation expenses. Bobby and Kris testified that they also had a joint checking account which was used for household expenses. Bobby and Kris further testified that Kris contributed a portion [7] of her salary to their joint checking account each month, and she placed the remainder of her salary into her retirement account.
¶ 7. After the trial, the chancellor granted the divorce, classified the couple’s separate and marital property, then equitably divided and distributed the marital assets. Dissatisfied, Kris filed her motion for reconsideration on November 10, 2009, and her amended motion for reconsideration on November 13, 2009. After a hearing on Kris’s motion, the chancellor denied Kris’s motion for reconsideration. Feeling aggrieved, Kris appeals and raises the following issues for the Court’s review: whether the chancellor committed reversible error in his division of the marital assets and marital debts; whether the chancellor committed reversible error in his determination of the fair market value of the marital assets; and whether the chancellor committed reversible error in his determination of the valuation date for the division of marital property.
STANDARD OF REVIEW
¶ 8. This Court’s standard of review regarding property division and distribution in divorce cases is a limited one. Oswalt v. Oswalt, 981 So.2d 993, 996 (¶ 11) (Miss.Ct.App.2007) (citing Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997)). “A chancellor’s division and distribution will be upheld if it is supported by substantial credible evidence. However, this Court will not hesitate to reverse if it finds the *9 chancellor’s decision is manifestly wrong, or that the court applied an erroneous legal standard.” Id. (citing Carrow v. Carrow, 642 So.2d 901, 904 (Miss.1994)).
DISCUSSION

I. Did the chancellor commit reversible error in his division of the marital property?

¶ 9. Kris argues that the chancellor committed reversible error in his division of the marital assets and marital debts. Specifically, Kris argues that the chancellor erred: by finding that only the appreciation of the homestead property was subject to equitable division; by classifying Industrial Steel Corporation and the 3.8 acres of land as non-marital assets; by failing to consider Kris’s total disability and health condition at the time of trial; and by inadequately dividing all of the marital assets and marital debts.
¶ 10. “When attempting to equitably divide property at issue in a divorce, the chancellor should first classify the parties’ assets as marital or non-marital based on Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994).” Boutwell v. Boutwell, 829 So.2d 1216, 1221 (¶ 19) (Miss.2002). The Mississippi Supreme Court held in Hems-ley that “[ajssets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties’ separate estates prior to the marriage or outside the marriage.” Hemsley, 639 So.2d at 914. Thus, the chancellor may equitably divide only the property that is deemed marital property. Curry v. Curry, 45 So.3d 724, 726 (¶ 8) (Miss.Ct.App.2010) (citing Messer v. Messer, 850 So.2d 161, 167 (¶ 24) (Miss.Ct.App.2003)).
¶ 11. “After classifying the parties’ assets as either marital or non-marital, the chancellor should then proceed to equitably divide the property using the factors set forth by the supreme court in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994).” Curry, 45 So.3d at 726 (¶ 9). Lastly, the chancellor should determine “whether the equitable division of the marital property, considered in light of the non-marital assets, adequately provides for both parties. If the distribution of the parties’ assets, including any separate property, fails to adequately provide for the parties, the chancellor then considers whether to award alimony to one of the parties.” Id. at 727 (¶ 9) (internal citations omitted).[8]
¶ 12. While considering the above-stated guidelines, we now turn to a review of the property division and distribution in the case at hand. The record contains the chancellor’s order dividing and distributing the marital property. The chancellor provided as follows:
Division of marital assets is governed under the law as stated in Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994) and Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994).
First, the character of the parties[’j assets, i.e., marital or non-marital, must be determined pursuant to Hemsley and subsequent cases. The property determined to be marital is then equitably divided, employing the Ferguson factors as guidelines.
Assets acquired during the course of a marriage are subject to an equitable division unless it can be shown by proof *10 that such assets are attributable to one of the parties[’] separate estates prior to the marriage or outside the marriage. Even an asset attributable to one party’s separate estate may lose its character as non-marital property if it is commingled with marital assets or used for familial purposes. Such converted assets are then subject to equitable distribution by the Court. Johnson v. Johnson, 650 So.2d 1281 (Miss.1994) and subsequent cases. See McDuffie v. McDuffie, [21 So.3d 685 (Miss.Ct.App.2009) ] [No.] 2008-CP-00033-COA September 22, 2009 hand-down, Mississippi] Court of Appeals.

The Court finds that the marital assets consist of:

1. The home and 2⅛0 acres in Jones County.

2. Kris’[s] retirement account accumulated during the marriage. ($105,-835.00)

3. Certain household furnishings.

Ip. Farm equipment.

5. Livestock.

In applying the Ferguson factors the Court finds as follows:
1.Bobby made the vast majority of the financial contributions to the acquisition of the property. He owned the home and land prior to the marriage[,] and he used funds owned by him prior to the marriage or earned by him during the marriage to improve the property and acquired the other marital assets. Kris did make financial contributions toward the family’s living expenses by contributions to a joint checking account. The marriage lasted seven years and five months. It appears without dispute that Kris’[s] addiction to prescription medications was the cause of the separation.
2. There was no evidence that either spouse had expensed, withdrawn or otherwise disposed [of] marital assets.
3. The value of the marital assets is reflected in Trial Exhibit 3 which is incorporated herein by reference.
4. All of the property was either owned by Bobby prior to the marriage or purchased by him using separate funds owned by him prior to the marriage or earned by him during the marriage.
5. No evidence was presented as to tax or other consequences to third parties.
6. Kris did not request alimony.
7. Bobby continues to operate his businesses which presumably will provide him with the same or similar income he earned during the marriage. Kris is unemployed. She has a pending application for Social Security Disability Benefits pending since November, 2008. Her drug dependency caused her nursing license to be restricted and her injury to her shoulder may interfere with her ability to perform general nursing duties. However, her injury occurred after separation of the parties and the Court finds that it should not be considered as part of the Ferguson factors. Kris was able to work and did work as a nurse after the separation and before her injury.
8. This is a case in which one partner to a marriage (Bobby) not only owned the bulk of marital assets prior to the marriage but expended premarital earnings on improvements to the property during the marriage'. But in making a division of marital property, the Court is not required to divide the property equally. The division should be fair based upon the facts of the case.
*11 The Court concludes that an equitable division of marital assets is as follows:
1. Kris shall receive all of her retirement account. ($105,835[.00] of which is a marital asset).
2. Bobby shall receive ownership of the marital home and acreage and the acreage he purchased after separation of the parties.
3. Bobby shall receive ownership of all farm equipment.
4. Kris shall receive one-half (1/2) of all remaining livestock (horses) based on Bobby’s agreement to [the] same during his trial testimony.
5. Kris shall receive all of the household furnishings she requested during her testimony at trial.
6. Bobby shall pay Kris the sum of $50,000.00 payable at the rate of $1,000.00 per month until paid in full.
Bobby and Kris are granted a divorce on the grounds of irreconcilable differences.
(Emphasis added).
¶ 13. “Equitable distribution does not mean equal distribution.” Seymour v. Seymour, 960 So.2d 513, 519 (¶ 15) (Miss.Ct.App.2006) (quoting Lauro v. Lauro, 924 So.2d 584, 590 (¶ 23) (Miss.Ct.App.2006)). No requirement exists dictating that Kris must receive half[9] of the equity in the marital home. As we noted in Seymour, the goal as it pertains to equitable division is “a fair division of marital property based on the facts of each case[.]” Seymour, 960 So.2d at 519 (¶ 15) (citing Ferguson, 639 So.2d at 929)). The record herein shows substantial evidence supporting the chancellor’s exercise of discretion in equitably dividing the marital property and awarding a larger share of the property to Bobby. More specifically, the chancellor’s opinion, as shown in the excerpts set forth herein, reflects that the chancellor considered the homestead to constitute marital property, as opposed to Kris’s assertion that the chancellor only considered the value in appreciation of the homestead as marital property.
¶ 14. Further, in his opinion dividing the marital property, the chancellor stated that he considered the contributions and expenditures of each spouse to the seven-year marriage and to the acquisition of the marital property. The chancellor also acknowledged in his opinion that Bobby owned the bulk of the marital assets prior to the marriage and also expended pre-marital earnings on improvements to the property during the marriage. The chancellor then noted that the evidence was without dispute that Kris’s addiction to prescription medications caused[10] the marital separation. In ordering an equitable distribution of property, chancellors must apply the Ferguson factors, which include:
*12 (1) contribution to the accumulation of property, (2) dissipation of assets, (3) the market or emotional value of assets subject to distribution, (4) the value of assets not subject to distribution, (5) the tax and economic consequences of the distribution, (6) the extent to which property division may eliminate the need for alimony, (7) the financial security needs of the parties, and (8) any other factor that in equity should be considered.
Vaughn v. Vaughn, 56 So.3d 1283, 1289 (¶ 20) (Miss.Ct.App.2011) (citing Hults v. Hults, 11 So.3d 1273, 1281 (¶ 36) (Miss.Ct.App.2009)).[11] Additionally, in applying the Ferguson factors, the chancellor properly considers three sub-factors in determining the parties’ contributions for purposes of marital distribution:
(a) direct or indirect economic contribution to the acquisition of the property; (b) contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and (c) contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
Rodriguez v. Rodriguez, 2 So.3d 720, 726 (¶ 11) (Miss.Ct.App.2009) (citing Ferguson, 639 So.2d at 928)).
¶ 15. This Court recognizes the limited standard of review that appellate courts utilize when reviewing a chancellor’s equitable division of the marital property. We additionally acknowledge that appellate courts lack the authority to overrule a chancellor’s property division and distribution absent a finding of manifest error. Parker v. Parker, 641 So.2d 1133, 1137 (Miss.1994). We also note that Mississippi is not a community property state; thus, the chancellor holds no obligation to divide the marital property equally. Id. After examining the property division as a whole, we find that the chancellor’s findings are supported by credible evidence; therefore, we affirm the chancellor’s equitable division of the marital property.
¶ 16. Further, we recognize that the chancellor awarded Kris a smaller percentage of the parties’ assets; however, we find, in light of our highly deferential standard of review, this fact, standing alone, is an insufficient ground for reversal. See Redd v. Redd, 774 So.2d 492, 496 (¶ 15) (Miss.Ct.App.2000) (affirming a chancellor’s division of marital property which resulted in the wife’s receiving only twenty-three percent of the entire marital estate). As such, we find no manifest error in the chancellor’s property division. This issue lacks merit.

II. Did the chancellor commit reversible error in his detennination of the fair market value of assets?

¶ 17. Kris next argues that the chancellor erred by not appointing an expert to opine as to the fair market value of several of the couple’s assets. Specifically, Kris argues that the chancellor should have appointed an expert to conduct an appraisal of the following assets: the home; the 3.8 acres of land; Mid-Mississippi Sales and Service, Inc.; Industrial Steel Corporation; livestock; farm equipment; and household furniture.
¶ 18. Bobby responds that he submitted documents supporting his valuation of all assets at issue to Kris’s counsel prior to trial and also introduced the same docu *13 ments into evidence at trial without objection. Bobby further claims that Kris failed to offer any evidence at trial related to the valuation of Mid-Mississippi Sales and Service, Inc. or Industrial Steel Corporation, even though she took the deposition of Andrew E. Gay, Bobby’s CPA. Also, as to the values of the other property, Bobby contends, as the purchaser of the property, he was in a position to give the court an estimated value.
¶ 19. It is the chancellor’s responsibility in a divorce proceeding to make an adequate investigation into the value of the marital property that is subject to division: “Property division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division.” King v. King, 946 So.2d 395, 403 (¶ 20) (Miss.Ct.App.2006) (citing Ferguson, 639 So.2d at 929). While we note that “expert testimony may be essential to establish valuation sufficient to equitably divide property, particularly when the assets are [diverse],” Redd, 774 So.2d at 495 (¶ 9), we also recognize and reiterate the principle that “findings on valuation do not require expert testimony and may be accomplished by adopting the values cited in the parties’ 8.05 financial disclosures, in the testimony, or in other evidence.” Horn v. Horn, 909 So.2d 1151, 1165 (¶ 49) (Miss.Ct.App.2005) (citing Ward v. Ward, 825 So.2d 713, 719 (¶ 21) (Miss.Ct.App.2002); Dunaway v. Dunaway, 749 So.2d 1112, 1118 (¶ 14) (Miss.Ct.App.1999)).
¶ 20. In the present case, the record reflects that only Bobby attempted to provide the chancellor with evidence regarding the valuations of the marital property. By contrast, the record shows that Kris failed to present any documents indicating her assets or liabilities, and she failed to place any valuation whatsoever on the marital property at issue. The chancellor’s opinion reflects that he utilized valuations set forth in trial exhibit three. Kris argues that the chancellor committed reversible error by not appointing experts to appraise the couple’s assets. However, this Court refuses to blame the chancellor for a party’s failure to present sufficient evidence of property valuation. Faced with similar circumstances, we provided as follows in Dunaway, 749 So.2d at 1121 (¶ 28), stating:
It is our conclusion that the chancellor, faced with proof from both parties that was something less than ideal, made valuation judgments that find some ev-identiary support in the record. To the extent that the evidence on which the chancellor based his opinion was less informative than it could have been, we lay that at the feet of the litigants and not the chancellor. The chancellor appears to have fully explored the available proof and arrived at the best conclusions that he could, and we can discover no abuse of discretion in those efforts that would require us to reverse his valuation determinations.
¶ 21. As explained in Dunaway, 749 So.2d at 1121 (¶ 28), it is not the chancellor’s duty to obtain appraisals of the marital property. Kris cannot now complain that the chancellor’s valuations are unfair when no reliable evidence of the value of the property was presented by her at trial, especially after she'provided no objection at trial as to the valuations provided by Bobby. As in Dunaway, the chancellor in the present case was faced with less than ideal proof, but he classified and divided the marital property in a way that was supported by the evidence presented by Bobby and testimony at trial. In the absence of any evidence as to the marital property valuations presented on Kris’s *14 behalf, we decline to find that the chancellor abused his discretion. See Common v. Common, 42 So.3d 59, 63 (¶ 13) (Miss.Ct.App.2010) (“It [i]s not the chancellor’s duty to obtain appraisals of the marital property.”). We again note that while expert testimony as to valuations of property might be helpful in some cases, it is not required. Further, the chancellor may consider other evidence presented by the parties, as done in the present case. Accordingly, this issue is without merit.

III. Did the chancellor commit reversible error in his determination of the valuation date for the division of marital assets and marital debts?

¶ 22. Lastly, Kris argues that the chancellor committed reversible error in his determination of the date of evaluation for the marital property. Kris contends that the chancellor should have used the date of trial, rather than the date the temporary order was entered, in setting the valuation date for the property division. In response, Bobby contends that the valuation date is within the discretion of the chancellor, see Hensarling v. Hensarling, 824 So.2d 583, 591 (¶ 25) (Miss.2002); thus, the date set by the chancellor was wholly proper.
¶ 23. Because we have held that the valuation date falls within the discretion of the chancellor when equitably dividing marital property upon divorce, Bullock v. Bullock, 733 So.2d 292, 298-99 (¶ 37) (Miss.Ct.App.1998) (citing MacDonald v. MacDonald, 698 So.2d 1079, 1086 (Miss.1997)), we must find that the chancellor in the present case did not abuse his discretion in setting the date of valuation as the date the temporary order was entered.[12] See also Hensarling, 824 So.2d at 591 (¶ 25) (finding the chancellor’s use of the date of separation as the date of valuation to be proper since the selection of the date of valuation falls within the discretion of the chancellor). As such, we find this issue without merit.
¶ 24. THE JUDGMENT OF THE JONES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. RUSSELL, J., NOT PARTICIPATING.

. The couple have no children together.

. The agreed temporary order provided Bobby with use and possession of the former marital abode and required him to be responsible for any expenses relating to the home. The temporary order also provided Bobby and Kris with the use and possession of the automobile he/she usually drove; required each to be responsible for the expenses related to his/her automobile; and prohibited each party from disposing of any marital assets, other than by paying for usual living expenses.

. While the record reflects that Kris filed this motion in limine with the court, no ruling on such motion appears in the record.

. Kris returned to work at Wesley Medical Center after the couple’s separation in 2007.

. Bobby testified he moved into the house in 1996.

. Bobby testified he conducts Mid-Mississippi Sales and Service, Inc. on this property.

.The amount which Kris contributed to the joint checking account is disputed between the parties.

. We pause to note that the record shows that neither party requested alimony during the divorce proceedings.

. See Smith v. Smith, 994 So.2d 882, 886 (¶ 12) (Miss.Ct.App.2008) (finding that the chancellor did not abuse his discretion in awarding one-half of the value of a van and a truck to each spouse, even though the chancellor did not classify the vehicles as marital property; by dividing them as marital property, the chancellor clearly regarded them as such, and testimony that the vehicles were owned and used during the marriage supported this decision).

. In Lowrey v. Lowrey, 25 So.3d 274, 285 (¶ 26) (Miss.2009), the Mississippi Supreme Court found that marital misconduct is a "viable factor” deserving of weight by the chancellor in the distribution of marital assets in a divorce case when the misconduct places a burden on the marital and family relationship’s stability and harmony. The supreme court also stated that an equitable division of property does not necessarily mean an equal division of property; rather, "fairness is the prevailing guideline” in the division of marital property. Id.

. In Vaughn, 56 So.3d at 1289 (¶ 20), this Court provided that, in addition to the Ferguson factors, the chancellor should also consider marital fault, citing Singley v. Singley, 846 So.2d 1004, 1013-14 (¶ 26) (Miss.2002).

. See Hults, 11 So.3d at 1281 (¶ 38) (classifying any property acquired or debt incurred after entry of temporary support order as separate property).