CARLTON, J.,
for the Court:
¶ 1. Sheila Myriek filed for a divorce from her husband, James Michael Myriek (“Mike”), on July 13, 2009. After a trial held in the Jones County Chancery Court, the chancellor granted the parties an irreconcilable-differences divorce, divided the marital estate, and awarded alimony to Sheila. Mike now appeals, raising the following assignments of error: whether the chancellor erred in (1) determining the incomes and expenses of the parties in an arbitrary manner that resulted in a permanent-alimony award that was not warranted by the evidence; (2) awarding Sheila temporary alimony and permanent alimony; (3) finding that Mike’s conduct was the primary cause of the demise of the marriage; (4) signing the judgment of divorce that included neither the visitation schedule already adopted by the court nor the agreements made at trial by the parties; and (5) allowing for the post-trial introduction of bank accounts that Mike allegedly wrongfully converted to his use. Finding no error, we affirm.
FACTS
¶ 2. Sheila and Mike married on June 17, 1983. Both parties worked throughout the entire marriage. Sheila worked at an insurance agency, then for Blossman Gas Company, and lastly as a bank teller at BancorpSouth. Mike worked as a project manager at Mississippi Power Company. The marriage produced three children, Jonathan, born October 20, 1987; Shawn, born September 16, 1990; and Allyson, born September 18,1997.
¶ 3. Sheila filed for divorce from Mike on July 13, 2009, and the couple separated on July 15, 2009. An agreed temporary order was entered on October 12, 2009.[1] On March 2, 2010, the parties jointly filed a motion asking the court to grant them a divorce on the ground of irreconcilable differences, and thereafter have a hearing on the issues to which the parties failed to agree.
¶ 4. On the first day of trial, September 9, 2010, the parties entered into an “Amended Consent to Divorce on the Ground[] of Irreconcilable Differences,” which requested the court decide certain unresolved issues.[2] Both Sheila and Mike *96 testified at trial. Shortly thereafter, on November 15, 2010, Sheila filed a “Motion to Re-Open Evidence and Clarify Issues.” Mike responded, and the parties allege that a hearing on that motion and a post-trial motion for contempt subsequently commenced on February 1, 2011.[3]
¶ 5. On March 15, 2011, the chancellor entered his findings of fact and conclusions of law. Mike thereafter filed a motion for reconsideration and, subsequently, an amended motion for reconsideration. On June 8, 2011, the chancellor entered a judgment granting a divorce based on irreconcilable differences. Following a hearing on Mike’s amended motion for reconsideration, the chancellor entered an order denying the motion.
¶ 6. Mike now appeals.
STANDARD OF REVIEW
¶ 7. “Chancellors are afforded wide latitude in fashioning equitable remedies in domestic[-]relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record.” Henderson v. Henderson, 757 So.2d 285, 289 (¶ 19) (Miss.2000). “In other words, ‘the [appellate court] will not disturb the findings of a chancellor unless the chancellor was manifestly wrong [or] clearly erroneous[,] or [applied] an erroneous legal standard^]’ ” Id. at 289-90 (¶ 19).
DISCUSSION
I. Whether the chancellor erred in his determination of the incomes and expenses of the parties and did so in an arbitrary manner, resulting in a permanent-alimony award that was not warranted by the evidence.
II. Whether the chancellor erred in awarding to Sheila temporary alimony and permanent alimony.
III. Whether the chancellor erred in finding that Mike’s conduct constituted habitual cruel and inhuman treatment.
¶ 8. Mike argues that the chancellor erred in the computation of the incomes and expenses of the parties.[4] After making findings as to Mike’s income and expenses, the chancellor increased Sheila’s award of temporary alimony of $500 to $1,000 a month in permanent alimony. Additionally, Mike argues that the chancellor erred in finding that his conduct constituted habitual cruel and inhuman treatment. Mike contends that no corroborating witness supported such a finding by the court, and while he recognizes that marital fault may be considered as a factor *97 under Armstrong,[5] he asserts that the supreme court has admonished chancellors to refrain from converting an irreconcilable-differences divorce into a contested divorce trial.
¶ 9. Mississippi case law establishes how chancellors are to approach the division of property in divorce cases. Curry v. Curry, 45 So.3d 724, 726 (¶ 8) (Miss.Ct.App.2010). This Court has previously stated:
Before dividing the couple’s assets, the chancellor should first classify the couple’s assets as either marital or non-marital. The supreme court held in Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss.1994), that “assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties’ separate estates prior to the marriage or outside the marriage.” Thus, the chancellor may equitably divide only the marital property. Case law also explains that while a spouse’s separate property retains its separate identity during the marriage, “property brought into the marriage by one partner and used by the family becomes a marital asset.”
After classifying the parties’ assets as either marital or non-marital, the chancellor should then proceed to equitably divide the property using the factors set forth by the supreme court in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994).[6] Finally, the chancellor should examine whether the equitable division of the marital property, considered in light of the non-marital assets, adequately provides for both parties. If the distribution of the parties’ assets, including any separate property, fails to adequately provide for the parties, the chancellor then considers whether to award alimony to one of the parties.
Id. at 726-27 (¶¶ 8-9) (internal citations omitted).
¶ 10. “The Mississippi Supreme Court has articulated certain factors known as the Armstrong factors for determining the proper amount of alimony.” Broome v. Broome, 75 So.3d 1132, 1139 (¶ 22) (Miss.Ct.App.2011). The Armstrong factors are:
1. Income and expenses of the parties;
2. Health and earning capacity of the parties;
3. Needs of each party;
4. Obligations and assets of each party;
5. Length of the marriage;
6. Presence or absence of minor children in the home;
7. Age of the parties;
8. Standard of living of the parties both during the marriage and at the time of the support determination;
9. Tax consequences of the spousal support order;
10.Fault or misconduct;
*98 11. Wasteful dissipation of assets by either party;
12. Any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
Id. (citation omitted).
¶ 11. In this case, the chancellor entered detailed findings of fact and conclusions of law, which outlined the division of the marital estate and the award of alimony to Sheila. The chancellor stated:
Sheila and Mike are granted a divorce on the ground[ ] of irreconcilable differences.
Mike’s visitation schedule with the minor children shall be in accordance with this Court’s standard visitation schedule. Sheila and Mike shall share responsibility for the payment of the minor children’s college expenses and non-covered medical, optical, dental and drug expenses in proportion to their respective incomes at the time the expenses are incurred. They shall also share the cost of the insurance of Shawn’s truck in the same fashion.
The Court makes the following findings and conclusions as to the Ferguson factors which apply in this case:
1. Contribution to acquisition of marital property: Although Mike has earned more than Sheila during the marriage and thus made a larger financial contribution, the Court finds that Sheila has made a contribution of equal value through her combination of earnings and domestic and child[-]rearing responsibilities. The Court finds that Sheila made a greater contribution to the stability and harmony of the marital and family relationships.
2. The Court heard no evidence concerning the dissipation of assets by either party. It is noted that Mike closed two joint accounts and converted same to his use. Such accounts are considered marital assets subject to division [as] hereafter set forth.
3. The market values of all assets, except household furnishings, are set forth in [a tidal exhibit.] Neither party assigned emotional value to any asset.
4. According to Sheila, Mike has some unspecified family heirlooms which she acknowledges belong to him and are not subject to division.
5. The Court heard no evidence of any tax or other economic consequences[,] or contractual or legal consequences to third parties[,] of a distribution of marital assets. However, the Court takes judicial notice that: Should either party withdraw all or any portion of retirement accounts prior to the age 59 1/2, the withdrawal will be subject to a penalty of 10% plus ordinary income taxes; the sale of stock will be taxed as a capital gain with the tax basis being the cost of the stock when acquired during the marriage; and that the division of retirement accounts must be accomplished by a qualified domestic relations order.
6. The majority of the marital assets to be received by Sheila consists of funds in retirement accounts. Those funds will not be available for her use unless she incurs substantial penalties for early withdrawal.
The Court determines that all marital assets (not previously agreed to by the parties) shall be equally divided. These assets include stock in The First [] Bank of Jones County, Powerco stock, the retirement accounts of the parties, and the joint bank accounts Mike closed. The household furnishings shall be divided in the following manner: Sheila *99 shall prepare two lists which, when combined, will list all household furnishings in dispute. Both lists shall be tendered to Mike[,] and he may select which list he desires as his share of the household furnishings!,] and Sheila shall have ownership of the items of the remaining list. In preparing the lists[,] Sheila shall not include any items of personal adornment!,] such as clothing or jewelry!,] nor any items exclusively devoted to the use of the minor children. Should Sheila otherwise fail to include any item or items on either list, it shall be presumed that Mike shall have ownership of same. Sheila has requested alimony. Ordinarily the Court attempts to utilize equitable division of marital assets in order to avoid periodic payments. However, as previously noted, the majority of the marital assets received by Sheila consists of retirement accounts which she cannot use for living expenses without incurring substantial tax penalties.
Mike is earning considerably more than Sheila and has the potential for his income to increase further through promotions. (Mike testified that he had already been offered promotions but did not accept because Sheila didn’t want to move.)
Mike will retain possession of the former marital home!,] and it will be necessary for Sheila to secure housing for herself and the minor children.
Sheila’s employment is stable and will probably receive pay increases in the future. However!,] there was no evidence that she may expect promotion. The evidence shows that she has occupied the same position at her place of employment for 25 years.
Sheila’s net monthly income for her employment is $1,902.42. Child support for two children adds $833.33 per month for a total available] monthly income of $2,734.75. One child is very near the age of majority!,] and the Court would expect that Mike would seek a reduction in child support when that occurs. Sheila’s Rule 8.05 financial statement indicates monthly expenses of [her] and the children of $6,306.00. Sheila testified that she has been required to borrow $15,000 from relatives in order to pay her attorneyfs] fees of $5,650.00 and [has] used the remainder for everyday living expenses.
Mike has a net monthly income of $6,834.00. His monthly expenses, including child support, are $4,868.00.
This was a 26[-]year marriage and!,] as previously stated, the Court determines that Mike was primarily at fault for its collapse.
Based upon the foregoing Armstrong factors, the Court determines that Mike should pay to Sheila the sum of $1,000.00 per month as permanent ... alimony.
Under current law[,] the alimony payments are taxable to Sheila for income[-]tax purposes and deductible by Mike.
(Emphasis added).
¶ 12. In his judgment of divorce, the chancellor reiterated that Mike must pay $1,000 per month to Sheila as permanent alimony and $833.33 per month to Sheila as child support. The chancellor also stated that the parties were to share joint legal custody of the minor children, and that Sheila would have primary physical custody. The chancellor ordered that Mike have reasonable visitation at all times agreed upon by the parties, but in the event the parties cannot agree, Mike will have the court’s standard visitation with Allyson. The court explained that visitation with Shawn will be decided upon by Mike and Shawn. Additionally, the *100 court ordered that Mike maintain medical and dental insurance for the minor children, with both parties being responsible for the expenses not covered by insurance, proportionate to their incomes, resulting in Mike being responsible for 72% and Sheila being responsible for 28% of all non-covered charges, including deductibles. Similarly, the chancellor ordered that the parties will each be responsible for college expenses, costs of extra-curricular activities, and automobile insurance for the minor children proportionate to the parties’ incomes, with Mike being responsible for 72% and Sheila being responsible for 28%. The chancellor then addressed the automobiles and certain pieces of personal property. Lastly, the chancellor stated as follows:
IT IS FURTHER ORDERED that Sheila will be responsible for compiling two lists which[,] when combined, contain all personal property to be divided between the parties. Both lists shall be tendered to Mike[,] and he will have his choice of either list. In preparing the lists, Sheila shall not include any items of personal adornment[,] such as clothing or jewelry[,] nor any items exclusively devoted to the use of the children of the parties.
[[Image here]]
IT IS FURTHER ORDERED that each party will be responsible for his/her own indebtedness incurred during the marriage, not otherwise stated herein.
IT IS FURTHER ORDERED that Mike shall execute his interest in all of the BancorpSouth [sjtock to Sheila[,] and said transfer shall be in consideration for her one-half interest in the former marital home. This transfer shall take place immediately[,] and Sheila will execute a[q]uitclaim [djeed to Mike conveying her interest in the home to Mike. Upon execution of the [qjuit-claim [djeed to Mike, Sheila will continue to have the peaceful use of the home for 30 days, allowing her time to vacate the former marital home. Mike will be responsible for the indebtedness on the former marital home and hold harmless and indemnify Sheila [for] any such indebtedness or cost associated therewith.
IT IS FURTHER ORDERED that the parties will equally divide all marital assets (not previously agreed to by the parties) [,] which include the stocks in ... First Bank of Jones County, Power-co stock, the retirement accounts of the parties and the joint bank accounts Mike previously closed.
1. The stocks shall be equally divided between the parties.
2. The division of the retirement accounts shall be accomplished through a qualified domestic relations order.
3. Mike shall pay unto Sheila[] the sum of $11,062.17, which represents one-half of the joint accounts that were closed out by Mike upon separation of the parties.
¶ 13. At the post-trial hearing on the amended motion for reconsideration, the chancellor clarified how he configured the award of alimony to Sheila, as well as Mike’s scheduled visitation. With respect to the alimony calculation, the chancellor stated the following:
In looking at the [cjourt’s ruling[,j the [cjourt determined that your client’s net monthly income, based on his [Rule] 8[.]05 financial statement, was $6,834 per month. That his monthly expenses — his financial statement of monthly expenses — was difficult to comprehend. After a further hearing, I undertook to calculate his expenses and find that his monthly expenses were $4,868, which included the child support. I took into consideration all of the expenses listed under the self column— *101 which he had identified as his expenses — and the only thing I changed was I reduced the claimed auto payment, which he had not yet incurred, but anticipated incurring from $867 per month to $500 per month.
Then, I took her [Rule] 8[.]05 [statement] and calculated her expenses and determined that there was a great disparity in their incomes; that she had the custody of the children. He had agreed to let her have the BancorpSouth stock in consideration for her equity in the home. That she was going to be required to get a new home, probably using that stock[,] selling it[,] and using it toward the purchase for the new home for herself and the minor child. That’s how I came up with it.
The chancellor then explained that the parties’ visitation schedule submitted as a trial exhibit and agreed upon by the parties at trial was to be the visitation schedule that would be in effect.
¶ 14. As evidenced above, the chancellor identified and considered both parties’ incomes and expenses. The chancellor then classified all assets and debts as marital or separate, valued these assets and debts, and equitably divided the marital estate. Based upon the division of the marital estate, the chancellor awarded alimony to Sheila. The record shows that the parties filed a motion and consent requesting the chancellor grant an irreconcilable-differences divorce and providing that certain unresolved issues would be submitted to the court. The record reflects that the chancellor clearly granted Mike and Sheila a divorce on the ground of irreconcilable differences, as requested.
¶ 15. While there is no question that conflicting testimony existed as to both parties’ incomes and expenses, this Court has held that “[w]here there is conflicting testimony, the chancellor, as the trier of fact, is the judge of credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation.” Bowen v. Bowen, 982 So.2d 385, 395 (¶ 42) (Miss.2008). Furthermore, we recognize and reiterate the principle that “findings on valuation do not require expert testimony and may be accomplished by adopting the values cited in the parties’ [Rule] 8.05 financial disclosures, in the testimony, or in other evidence.” Jenkins v. Jenkins, 67 So.3d 5, 13 (¶ 19) (Miss.Ct.App.2011). The chancellor acted well within his discretion, based upon the evidence presented, in dividing the marital estate and in awarding alimony to Sheila. Mike’s claim of error is without merit.
IV. Whether the chancellor erred in signing the judgment of divorce that neither included the visitation schedule already adopted by the court nor the agreements made at trial by the parties.
¶ 16. Mike argues that the chancellor erred in signing the judgment of divorce that failed to include the visitation schedule with the minor children, the agreement reached by the parties as to how to divide the personal property, and the other agreements made at trial by the parties. Specifically, Mike contends that he put into evidence a proposed visitation schedule that provided to him additional time with the children above and beyond the standard visitation schedule. At the conclusion of trial, the chancellor ordered that the schedule proposed by Mike be adopted as the visitation schedule, subject to minor corrections made by the court. The chancellor’s findings of fact and conclusions of law also stated, “The agreements made by the parties at trial are incorporated by reference and shall be set *102 forth in full in the final judgment of divorce.” The findings and fact and conclusions of law also stated, however, that at trial, the parties failed to enter an agreement settling the issue of Mike’s visitation with the children.
¶ 17. Mike contends that when Sheila’s attorney submitted to his attorney the proposed judgment of divorce, his counsel refused to sign it because the judgment failed to contain the visitation schedule and the other issues the judge ruled upon immediately at the conclusion of the trial.[7] During the hearing on Mike’s post-trial amended motion for reconsideration, Mike brought the court’s attention to the visitation schedule that the court adopted at the conclusion of the trial that was absent from the judgment of divorce. Referring to his ruling at trial, the chancellor stated, “If that’s what the record reflects[,] that’s what we’re going to do.” However, Mike asserts that the chancellor entered the judgment of divorce prepared by Sheila’s counsel without including the proper visitation schedule. Mike claims this is plain error.
¶ 18. On appeal, Mike cites no authority in support of his argument. This Court has held that “[a] party’s failure to cite authority in support of an argument precludes consideration of the issue on appeal.” Griffith v. Griffith, 997 So.2d 218, 225 (¶ 26) (Miss.Ct.App.2008) (citing Boutwell v. Boutwell, 829 So.2d 1216, 1223 (¶29) (Miss.2002)). Nonetheless, we find no merit to this argument.
¶ 19. On April 29, 2011, after the chancellor entered its findings of fact and conclusions of law, but before the chancellor entered the judgment of divorce, Mike filed a motion for reconsideration, and shortly thereafter, an amended motion for reconsideration.[8] In his post-trial motions for reconsideration, Mike argued that the chancellor erred in the following: its analysis of the parties’ income and expenses; its finding of marital fault; its failure to include the previously adopted visitation schedule; its consideration of the joint accounts closed by Mike; its valuation of the retirement accounts; its award of alimony to Sheila; its decision regarding which party should draft the lists of the parties’ personal property; and the division of the family’s photographs and videos.
¶ 20. On June 8, 2011, the chancellor entered the judgment of divorce on the basis of irreconcilable differences. In the judgment of divorce, regarding Mike’s visitation with the children, the chancellor specifically stated: “Sheila [shall] have the primary physical custody of the parties[’] minor children, with reasonable visitation rights for Mike at all times agreed upon by the parties, but in the event the parties cannot agree, Mike will have the Court’s standard visitation with Allyson.” The chancellor then set forth the chancellor’s standard visitation schedule. The chancellor further noted that visitation with Shawn was to be decided upon by Mike and Shawn. On June 30, 2011, the chancellor held a hearing on Mike’s motion for reconsideration and amended motion for reconsideration. At the hearing, Mike notified the chancellor that, at trial, the court had adopted a proposed visitation schedule and stated that the visitation schedule, as modified, would go into effect immediately. The chancellor replied, “If that’s what the *103 record reflects[,] that’s what we’re going to do.” Following the hearing, the chancellor denied Mike’s motion for reconsideration.
¶ 21. “Where a chancellor has made a factual finding on the matter of visitation, this Court will not disturb [that] findingf] unless there is no credible evidence” supporting the finding or if “he has committed manifest error or ... applied an erroneous legal standard.” Strange v. Strange, 43 So.3d 1169, 1172 (¶ 8) (Miss.Ct. App.2010). “When the chancellor determines visitation, he must keep the best interest of the child as his paramount concern while always being attentive to the rights of the non-custodial parent, recognizing the need to maintain a healthy, loving relationship between the non-custodial parent and his child.” Harrington v. Harrington, 648 So.2d 543, 545 (Miss.1994). In the absence of compelling circumstances, the noncustodial parent’s visitation “should be tantamount to custody with respect to the place and manner” of exercising thé visitation. Cox v. Moulds, 490 So.2d 866, 868 (Miss.1986). “[T]here must be evidence presented that a particular restriction on visitation is necessary to avoid harm to the child before a chancellor may properly impose the restriction.” Harrington, 648 So.2d at 545 (citation omitted). “Otherwise, the chancellor’s imposition of a restriction on a non-custodial parent’s visitation is manifest error and an abuse of discretion.” Id. In finding no merit to this alleged error, we acknowledge the discretion of the chancellor in awarding visitation, as stated above. See Strange, 43 So.3d at 1172 (¶ 8). The record reflects evidence supporting the discretionary decision of the chancellor as to the visitation schedule, and the record also shows that following trial, the chancellor found no error in his prior decision as to the visitation schedule ordered. This issue is without merit.
Y. Whether the chancellor erred in allowing for the post-trial introduction of bank accounts that Mike allegedly wrongfully converted to his use.
¶ 22. Mike contends that the parties entered into an amended consent as to the resolution of certain issues and the submission of disputed issues to the court. Mike asserts that a few weeks following the entry of the consent and the actual trial, Sheila’s counsel filed a motion to reopen the record regarding some bank accounts that were liquidated into Mike’s name prior to the temporary order. Mike alleges that the chancellor issued an oral ruling at the hearing on Sheila’s motion, but the chancellor never entered an order granting the motion to reopen. Mike further asserts that there was no testimony offered at the trial as to any dissipation of the money in the bank accounts. Mike alleges error in the chancellor’s findings of fact and conclusions of law in which the court found: “It is noted that Mike closed two joint accounts and converted same to his use.” Mike claims that he objected at all times to the court considering these accounts.
¶ 23. Mike points out that at the hearing on his motions for reconsideration, the chancellor explained that he would take under advisement the issue of the bank accounts. However, the court ultimately entered an order denying Mike’s motion.
¶24. Again, Mike cites no authority in support of this issue. “Failure to cite authority in support of claims of error preludes this Court from considering the specific claim on appeal.” Boutwell, 829 So.2d at 1223 (¶ 33). Nevertheless, we *104 find no merit to this issue.[9] The record shows that prior to trial, the parties asked the chancellor in the parties’ amended consent agreement, which requested an irreconcilable-differences divorce, to determine: “Equitable [distribution of the retirement accounts of both parties and bank stocks and all other joint assets.” Sheila testified at trial that she borrowed money from her parents for her' attorney’s fees because Mike took money out of the marital bank accounts so that Sheila had no access to the funds. See Faerber v. Faerber, 13 So.3d 853, 861 (¶32) (Miss.Ct.App.2009) (“Under our governing case law, marital property continues to accumulate until the court enters a temporary support order.”). Therefore, the record reflects that the issue of the parties’ dissipation of these accounts was properly before the chancellor at trial, pursuant to the parties’ consent, without need for the court to enter an order to reopen the record for such consideration.[10] ' We find this issue to be without merit.
¶ 25. THE JUDGMENT OF THE JONES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. ISHEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY JAMES, J.

. The temporary order was subsequently supplemented on July 21, 2010. On July 21, 2010, the chancellor entered an order ordering Mike to pay Sheila $500 per month as temporary alimony.

. The parties settled all issues except the following: (1) Mike’s visitation schedule; (2) the marital home; (3) the award of alimony to Sheila, if any; (4) equitable distribution of the retirement accounts of both parties, bank stocks, and all other joint assets; (5) equitable division of all marital debts; (6) medical and dental insurance for Sheila; (7) attorney’s fees of either party; (8) children’s medical *96 and college expenses; (9) insurance on Shawn's vehicle; and (10) the debt on Shawn's four-wheeler.

. As noted by Sheila, a transcript of the February 1, 2011 hearing is not included in the appellate record. Sheila contends that argument of counsel was not recorded. Also absent from the record is any order on Sheila's motion to reopen evidence and to clarify issues. Likewise, we do not find any orders on the three motions for contempt filed by Sheila. See Serton v. Serton, 819 So.2d 15, 20 (¶ 20) (Miss.Ct.App.2002) ("It is the appellant’s responsibility to provide the appellate court with a sufficient record to support the matters assigned as error.”); see also M.R.A.P. 10.

. Mike contends that the chancellor failed to consider $2,539 a month of documented expenses when deflating his expenses and determined that Mike had $1,670.39 more a month in income than what was shown on his Uniform Chancery Court Rule 8.05 financial disclosure, check stubs, and tax returns. Mike suggests that the chancellor did not treat Sheila’s expenses and income in the same manner.

. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).

. The Ferguson factors are as follows:
(1) substantial contributions to the accumulation of the property, including economic and domestic contributions by each party to the marriage, (2) expenditures and disposal of the marital assets by each party, (3) the market value and emotional value of the marital assets, (4) the value of the nonmari-tal property, (5) tax, economic, contractual, and legal consequences of the distribution, (6) elimination of alimony and other future frictional contact between the parties, (7) the income and earning capacity of each party, and (8) any other relevant factor that should be considered in making an equitable distribution.
Curry, 45 So.3d at 726 n. 1 (citation omitted).

. The judgment of divorce includes the signature of the chancellor and Sheila's attorney, but it fails to include the signature of Mike’s attorney.

. The standard of review for a denial of a motion filed under either Rule 59 or Rule 60 of the Mississippi Rules of Civil Procedure is abuse of discretion. Turner v. Turner, 73 So.3d 576, 579 n. 1 (Miss.Ct.App.2011).

. We again recognize that this Court employs an abuse-of-discretion standard of review when considering a denial of a motion filed under either Rule 59 or Rule 60 of the Mississippi Rules of Civil Procedure. Turner, 73 So.3d at 579 n. 1.

. See Henderson, 757 So.2d at 289 (¶ 19); Turner, 73 So.3d at 579 n. 1.